IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00106-RM-NRN

KIMBERLY S. GRAYDEN,

Plaintiff,

v.

SPRING CREEK ENERGY PARTNERS, LLC,
a Colorado limited liability company and
JASON L. EDDINGTON, an individual,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. #50)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on Spring Creek Energy Partners, LLC ("Spring Creek") and Jason L. Eddington's (together, "Defendants") Motion for Summary Judgment (Dkt. #50), referred by Judge Raymond P. Moore. (Dkt. #55.) Defendants filed the Motion for Summary Judgment on August 10, 2021. (Dkt. #50.) Ms. Grayden[1] responded (Dkt. #53)[2] and Defendants replied (Dkt. #61.) The Court heard oral

---

[1] In the interest of clarity, the Court notes that the relevant briefs and exhibits refer to Plaintiff as Ms. Pitman rather than Ms. Grayden. Plaintiff was married in August 2021 and changed her name. She filed a motion to amend the caption to reflect her name change (Dkt. #68), which the Court granted. (Dkt. #70.)

[2] Ms. Grayden's response to the motion for summary judgment requested the Court defer ruling on or deny Defendant's motion for summary judgment under Rule 56(d). (*See* Dkt. #57.) The Court denied this request at the Motion Hearing. (*See* Courtroom Minutes, Dkt. #66.)

argument on September 23, 2021 (*see* Dkt. #66), has taken judicial notice of the Court's

file and considered the applicable Federal Rules of Civil Procedure and case law. Now,

being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED**

that Defendants' Motion for Summary Judgment be **GRANTED only with respect to**

**the unjust enrichment claim** and **DENIED in all other respects.**

### BACKGROUND[3]

Ms. Grayden is the personal representative of the estate of Wilda Eugene

Thornton, also known as Genne Thornton. (Dkt. #62[4] at 1, ¶ 2.) Ms. Thornton died in

2016 and bequeathed Overriding Royalty Interests[5] (ORRIs) in certain property

containing oil wells to Ms. Grayden. (*Id.* at ¶ 1.) The ORRIs at issue in this case (the

---

[3] The following factual summary is based on the parties' briefs on the motions and documents submitted in support thereof. These facts are undisputed unless otherwise stated. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[4] Under Judge Moore's Practice Standards, the Defendants prepared a Separate Statement of Undisputed Material facts. (Dkt. #52-2.) This document contains three columns. The first column lists the Defendants assertions of fact and the remaining two columns are blank. Ms. Grayden then submitted her Response and Additional Facts and Supporting Evidence where she filled the second column with her evidence disputing Defendants' facts in the corresponding rows, and then listed her own set of additional facts. (Dkt. #54.) Defendants then replied in support of their original assertions, again in the rows corresponding to their original list of facts, and responded to Ms. Grayden's factual assertions, all in the third column. (Dkt. #62.) Because this last document is the most complete chart of undisputed facts, all citations to the parties' statements of fact are to Dkt. #62.

[5] An overriding royalty interest is "[a] share of either production or revenue from production (free of the costs of production) carved out of a lessee's interest under an oil-and-gas lease." *See Royalty*, *Black's Law Dictionary* (11th ed. 2019).

"Township 3 ORRIs") relate to the Flossie E. Rippy Hunt, Edwin R. Bullard, and Anna Novak leases, located in Weld County, Colorado. (*Id.* at 3.)

Ms. Grayden was interested in selling some of her ORRIs, but only those that did not cover producing wells and were thus not generating any revenue. She claims that Defendants tricked or deceived her into selling the Township 3 ORRIs which covered wells that were, in fact, producing. She brought this lawsuit to void or rescind the written contract she signed that conveyed a fractional interest in the Township 3 ORRIs to Defendant Spring Creek. Ms. Grayden argues that she was under mistaken impression that the ORRIs she was selling did not involve currently producing wells, and that the Defendant buyer did know the wells were producing and should have told her. Indeed, she argues that Spring Creek's agent, Mr. Eddington, not only remained silent, but falsely and affirmatively told her that the Township 3 ORRIs were not producing. To quote Ms. Grayden's Opposition to Defendant's summary judgment motion:

> Ms. [Grayden] is not claiming that the contract should be rescinded because she did not read or understand its terms. On the contrary, Ms. [Grayden] is claiming that the contract should be rescinded because she entered into it under the mistaken understanding of an antecedent fact—namely, that the royalty interests she was selling did not contain any then-producing wells. Ms. [Grayden] was mistaken about that fact; defendants not only knew she was so mistaken but actively caused, encouraged, and failed to disabuse her of that mistake; and defendants were required as a matter of equity and good conscience to correct her mistake.

Dkt. #53 at 5–6.

Mr. Eddington is a principal of Defendant Spring Creek, a company that invests in oil and gas interests, including by investigating and negotiating to acquire ORRIs. (*See* Dkt. 52-1.) As part of its investigation, Spring Creek relies on information available from public records or from property owners. (Dkt. #62 at 1, ¶ 7.) With respect to the

ORRIs in this case, Defendants represent that all of the information they obtained about the Township 3 ORRIs came from public records or from Ms. Grayden herself. (*Id.* at 1, ¶ 8.) Put differently, Defendants contend that Ms. Grayden had access to all of the same information that Defendants had concerning the ORRIs; and, this being an arms-length transaction, Defendants were under no duty to disclose to Ms. Grayden anything related to the ORRIs or to correct her mistaken belief. (*See id.*)

**The Sale of the 1/3 Interest in the Township 3 ORRIs**

Ms. Grayden and Defendants negotiated the purchase and sale of the Township 3 ORRIs. Defendants allege that Ms. Grayden hired a landman[6]—an expert in issues related to land, including oil and gas interests—in mid-November 2019 to assist with the transaction. (*Id.* at ¶ 13.) Ms. Grayden asserts that she did not hire the landman but that the landman did "informally and verbally advise[] Ms. [Grayden] on a different overall transaction at a different point in time." (*Id.*) In any event, the undisputed facts demonstrate that Ms. Grayden at least had access to the advice and counsel of a landman in negotiating the sale of her Township 3 ORRIs.

On March 19, 2020, Ms. Grayden entered into a Purchase and Sale Agreement ("PSA") wherein Ms. Grayden agreed to sell one-third of her ORRIs in two separate

---

[6] According to the American Association of Professional Landmen, a landman or "Petroleum Landman" in an individual who performs various services for oil and gas companies or mineral interest owners, including, negotiating for the acquisition or divestiture of mineral rights; conducting due diligence required for the purchase and sale of companies or oil and gas properties; negotiating business agreements that provide for the exploration and/or development of minerals; and determining ownership in minerals through the research of public and private records. *What is a Landman?*, Am. Ass'n of Prof'l Landmen, https://www.landman.org/about/who-we-are/what-is-a-landman (last visited December 9, 2021).

sections for a total of $650,250.00. (*Id.* at 4, ¶ 20.)[7] This Purchase and Sale Agreement contained an integration clause which stated: "This Agreement contains the entire agreement of the parties related to its subject matter and cannot be modified or waived unless in a signed document." (*Id.* at ¶ 21.)

On April 13, 2020, Ms. Grayden delivered a signed and notarized Assignment of Overriding Royalty Interest (the "Assignment") conveying to Spring Creek "1/3rd or 33.33% of Assignor's right, title, and interest in and to any and all leasehold interests, royalties, overriding royalties, and production payments, payable or owed by any Lessee, in and to the below described lands and leases situated in Weld County, Colorado [the Township 3 ORRIs]." (*Id.* at ¶ 24.) Spring Creek notes, and Ms. Grayden does not dispute, that the Assignment does not contain any reservation of interest in or to any of the leases or lands described therein, and does not reference or include Ms. Grayden's purported refusal to sell her royalty interests in any *producing* wells. (*Id.* at ¶ 27.) Also on April 13, 2020, Ms. Grayden delivered a signed and notarized Affidavit of Identity clarifying that Wilda Eugene Thornton is the same person as Genne Thornton for purposes of the chain of title. (*Id.* at ¶ 28.)

On April 15, 2020, Ms. Grayden and Spring Creek entered into a separate PSA (*see* Dkt. #14-6) for the purpose of clarifying that the original March 19, 2020 PSA was split into two parts: one for the Township 3 ORRIs and one for the Township 1 ORRIs. (*Id.* at 5, ¶¶ 30–31.) Except for the date, purchase price, and legal description of the ORRIs, the March 19, 2020 PSA and the April 15, 2020 PSA are substantially similar.

---

[7] The two separate sections were the Township 3 ORRIs (described above) and the ORRIs at Township 1 north, Range 68 West, 6th P.M. Sec 24: W2 (the "Township 1 ORRIs"). (*See id.*)

(*Id.* at ¶ 32.) As a result of the April 15, 2020 PSA, Ms. Grayden sold a one-third interest in her Township 3 ORRIs to Spring Creek in exchange for $401,935.50 less certain expenses.[8] (*Id.* at ¶ 33.)

**The Failed Sale of Additional Royalty Interests**

On May 8, 2020, Ms. Grayden reached out to Mr. Eddington to inquire whether "whoever bought the 1/3 [of the Township 3 ORRIs] in April [would] be interested in another 1/3 for the same amount." (*Id.* at 5, ¶ 37.) The parties negotiated a price and, on May 12, 2020, signed a new PSA for the remaining two-thirds interest of the Township 3 ORRIs. (*Id.* at ¶ 38.) However, on May 18, 2020, Ms. Grayden terminated this second deal for the remaining two-thirds interest, explaining that there were title issues she needed to resolve. (*Id.* at ¶ 39.) Spring Creek released Ms. Grayden from the sale. (*Id.* at ¶ 40.) When Ms. Grayden requested termination of the pending sale for the remaining two-thirds interest of Township 3 ORRIs, she did not raise any issues with the earlier April 2020 sale of the first one-third interest. (*Id.* at ¶ 41.)

**Clarifying the Title, Correcting the Assignment, and the Alleged Ratification**

Also on May 18, 2020, Ms. Grayden communicated with Mr. Muras from Noble Energy, which appears to be the company pumping oil from the wells or, at the very least, ensuring that parties with ORRIs receive royalty payments based on their percentage interest. (*See id.* at 10, ¶ 71.) Mr. Muras explained that he had received a phone call from Spring Creek and was calling to discuss some issues. (*Id.*) Ms. Grayden asked him to communicate these issues in writing. (*Id.*)

---

[8] Ultimately, there were title issues related to the Township 1 ORRIs, so the sale of the Township 1 ORRIs was never consummated. The Township 1 ORRIs are not at issue in this case. (*See id.* at ¶¶ 34–36.)

The next day, on or about May 19, 2020, Ms. Grayden and her attorney, Mr. Book, communicated via email with Mr. Muras from Noble Energy. (*See id.* at 6, ¶ 42) Mr. Book's email to Mr. Muras simply stated that he was then representing Ms. Grayden "regarding the real property you and she have been speaking about" and informing Mr. Muras that "some deed work may be needed." (*Id.*; *see also* Dkt. #52-3 at 50.) Noble Energy previously had suspended royalty payments generated from production at the Township 3 ORRIs (which otherwise would have been distributed to Ms. Grayden), because there had been confusion on Noble Energy's part about whether the deceased Wilda Eugene Thornton and Genne Thornton (the name that appeared in the chain of title) were the same person. (Dkt. #62-1 at 6, ¶ 43.)

In his response, Mr. Muras explained the following information:

- Noble had investigated the chain of title and discovered that Wilda Eugene Thornton and Genne Thornton were one and the same. (*See* Dkt. #52-3 at 47.)

- An Affidavit of Identity resolved the title issue by clarifying that Wilda Eugene Thornton and Genne Thornton were indeed the same person. (*Id.*; *see also* Dkt. #62 at 7, ¶ 44.)

- Because this title issue was resolved, Noble would transfer the interest in the new wells from Ms. Thornton to Ms. Grayden. (Dkt. #52-3 at 48–49; Dkt. #62 at 7, ¶ 45.)

- Ms. Grayden would receive 100% of the revenue credited to Genne Thornton up until December 1, 2019, which was the effective date set forth in the April 15, 2020 PSA. (Dkt. 52-3 at 49.) Spring Creek would receive one-third of the revenue generated from December 1, 2019 until April 15, 2020. (*Id.*)[9]

Further, Noble Energy's email advised Ms. Grayden and her attorney that "[s]ince the transfer [from Ms. Thornton to Ms. Grayden] in 2016, Noble has drilled new wells"

---

[9] After April 15, 2020, Raisa II Minerals LLC ("Raisa") would receive 100% of Spring Creek's one-third interest, as Spring Creek conveyed its interest to Raisa. (*Id.*)

on the land subject to the Township 3 ORRIs and that most of the wells had generated revenue. (Dkt. #52-3 at 48; Dkt. #62-1 at 7, ¶ 46.) Noble Energy also directed Ms. Grayden and her attorney to the public website of the Colorado Oil and Gas Conservation Commission ("COGCC"), https://cogcc.state.co.us/data.html#/cogis, "to see when each of these wells began producing." (Dkt. #52-3 at 48; Dkt. #62-1 at 7, ¶ 47.)

Ms. Grayden and her attorney objected to Spring Creek receiving one-third royalty distributions beginning on December 1, 2019, because the sale to Spring Creek did not actually close until the March of 2020. (*See* Dkt. #52-3 at 45–47; *see also* Dkt. #62 at 10, ¶¶ 72–75.) On May 26, 2021, Ms. Grayden and Spring Creek executed a Corrected Assignment of Overriding Royalties which changed the effective date of the conveyance in the April 15, 2021 PSA from December 1, 2019 to March 31, 2020. (*See* Dkt #62 at 7, ¶ 49.)

Defendants argue that the Corrected Assignment, which was executed after Ms. Grayden indisputably knew that the Township 3 ORRIs were producing revenue, "ratifies the unconditional conveyance of the Township 3 ORRIs to Spring Creek, the warranties of title, and the legal description of the ORRIs themselves." (*Id.*) Ms. Grayden, however, contends that the Corrected Assignment merely "prevented [Spring Creek] from stealing additional funds for the time period before March 31, 2020"; she never intended to ratify Spring Creek's "theft of [her] overriding royalty interests after March 31, 2020." (*Id.*) She also contends that the Corrected Assignment simply reflected what she had always understood as the effective date of her contract with

Spring Creek (*see id.* at 8, ¶ 51) and that she never intended to waive any claims related to the transaction. (*Id.* at 11, ¶¶ 80–82.)

**The Dispute**

Ms. Grayden asserts that until the Spring of 2020, she thought her Township 3 ORRIs did not cover any producing wells (*id.* at 9, ¶ 58) and that she was not assigning any ORRIs in producing wells to Spring Creek. (*Id.* at ¶¶ 61–62.) She claims she never would have agreed to sell her Township 3 ORRIs had she known that the wells were, in fact, producing. (*Id.* at ¶¶ 63–64.) Further, she alleges that she made repeated statements to Mr. Eddington that she would not sell any ORRIs that were connected to producing wells. (*Id.* at 10, ¶ 66.) According to Ms. Grayden, Defendants knew of her mistaken belief that the Township 3 ORRIs were not producing and thus not generating revenue, but nevertheless made affirmative statements that misled her into signing the PSA and the Assignment. (*Id.* at 9–10, ¶¶ 65–66.)

Defendants do not dispute that Ms. Grayden made certain statements that she did not want to sell revenue-generating interests. However, they allege that these statements related only to other wells that are not at issue in this case. (*Id.* at 8, ¶ 56–57, 59–60.)

In any event, at this summary judgment stage, disputed facts are viewed in the light most favorable to the non-moving party. Because Ms. Grayden swears she did not know the Township 3 ORRIs covered producing wells, in part because the Defendants affirmatively misrepresented that they did not cover producing wells, then, for purposes of the summary judgment motion, the Court must accept that Ms. Grayden entered into

the sales contract on the mistaken belief that there were no producing wells covered by the Township 3 ORRIs.

The question is whether Ms. Grayden's arguable unilateral mistake of fact about circumstances underlying the contract, where the other party to the contract allegedly knew the truth and made affirmative misstatements reinforcing that mistaken belief, makes a difference as a matter of law. Put another way, are these disputed issues of fact *material* issues that will preclude summary judgment in Defendants' favor?

Defendants' position is that, as a matter of law, a seller of real property interests, who has access to and constructive notice of the same public records and resources that a buyer has, cannot sue for fraud or rescind a valid contract merely "because she failed to conduct adequate due diligence about her own property." (Dkt. #61 at 2.)

**The Claims of the Operative Complaint**

The operative complaint brings four claims for relief: fraudulent concealment, unjust enrichment, unilateral mistake, and civil theft. (*See* Dkt. #31.)

Defendants move for summary judgment on each of Ms. Grayden's claims, arguing that she signed an integrated contract and must be bound by it. According to Defendants, Ms. Grayden's suggestions that she only wanted to sell interests in non-producing wells conflict with the terms of the written contract. Further, Defendants assert that Ms. Grayden was not justified in relying on the Defendants' alleged misrepresentations, because information concerning whether the wells were producing is publicly available on the Colorado Oil and Gas Conservation Commission ("COGCC") website and because Ms. Grayden could have engaged experts in the field to learn about the status of her royalty interests, as she had in the past. Indeed, Defendants say

that had Ms. Grayden or someone working for Ms. Grayden bothered to visit the property in question, they could have seen the working wells in plain sight. Because of this, Defendants argue, Ms. Grayden was not justified in relying on Defendants' allegedly false statements and cannot rescind the contract even if she had made a unilateral mistake.

## LEGAL STANDARD

### I.      Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I.   <u>Fraudulent Concealment</u>

The Court first addresses Ms. Grayden's fraudulent concealment claim. Defendants argue that Ms. Grayden's fraudulent concealment claim fails because they had no duty to disclose that the ORRIs being sold were then generating revenue. Further, even if they did misrepresent the status of the wells to Ms. Grayden, her reliance on those misrepresentations was not justified.

## A. Disputed Issues of Fact Preclude Summary Judgment in Favor of Defendants

The Court finds there are disputed issues of fact that preclude the grant of summary judgment on Ms. Grayden's fraudulent concealment claim.

To prevail on her claim for fraudulent concealment, Ms. Grayden must show: (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5) the plaintiff's action on the concealment resulting in damage. *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991); *see also Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016); *Poly Trucking, Inc. v. Concentra Health Servs, Inc.*, 93 P.3d 561 (Colo. App. 2004). Ms. Grayden must also show that she relied on the assumption that the concealed fact did not exist and *that her reliance was justified*. *See* Colo. Jury Instr., Civ. 19:2; *see also Nielson v. Scott,* 53 P.3d 777, 780 (Colo. App. 2002) (fraudulent concealment claim requires "reliance on . . . the assumption that the concealed fact does not exist") (citations omitted). The Colorado Jury Instructions explain the standard for justifiable reliance in the case of non-disclosure and concealment as follows:

> When dealing with someone else, a person is justified in assuming that the other person will not intentionally (fail to disclose a past or present material fact which the other persons knows and had a duty to disclose) (conceal a material fact).

> However, a person is not justified in relying on this assumption when someone of the same or similar intelligence, education, or experience would not rely on it.

*Id.* at Colo. Jury Instr., Civ. 19:9. Reliance may be justified even though the plaintiff did not make an investigation that would have revealed the true facts unless (1) she knew "specific facts that would have caused a person of the same or similar intelligence, education or experience to be suspicious and investigate; *and* (2) she had a reasonable opportunity to investigate. *Id.* at 19:10 (emphasis added); *see also* Restatement (Second) of Torts § 540 ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."); Restatement (Second) of Torts § 545A ("One who justifiably relies upon a fraudulent misrepresentation is not barred from recovery by his contributory negligence in doing so.").

This Court finds that Ms. Grayden's testimony that Defendants made affirmative misstatements of fact (or at least misleading statements) to the effect that the Township 3 ORRIs did not cover any producing wells (Dkt. #54-1 at ¶¶ 9–10)[10] means that the fraudulent concealment claim will survive summary judgment.

First, the trier of fact could conclude that, in light of the affirmative misstatements alleged to have been made by the Defendants, coupled with the Defendants' knowledge that Ms. Grayden had no intention of selling ORRIs that were then producing, there was a duty on the part of Defendants to disclose that the ORRIs did cover producing wells thereby correcting Ms. Grayden's mistaken impression. This duty of disclosure is covered by the Restatement (Second) of Torts §551(2)(b), which provides that a party to a business transaction is under a duty to disclose "matters known to him that he

---

[10] "In fact, Mr. Eddington actually informed me over the telephone that no new wells had been drilled in the lands related to my overriding royalty interests. Mr. Eddington repeated that representation several times over the course of our negotiations."

knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading." Mr. Eddington's statements that no new wells had been drilled on the lands relating to her overriding royalty interests arguably created a misleading impression that the ORRIs were not then producing revenue, and he therefore had a duty to correct that misimpression.

In coming to this conclusion, the Court accepts that if the Defendants had merely remained silent (even knowing of Ms. Grayden's mistaken belief that the ORRIs were not producing income), under Colorado law there would have been no duty on their part to inform or educate Ms. Grayden about her mistaken understanding. This principle was made clear in *Mallon Oil Co. v. Bowen/Edwards Associates, Inc.*, 965 P.2d 105 (Colo. 1998). In *Mallon*, citing the Restatement (Second) of Torts § 551(2), the Colorado Supreme Court held there were no objective circumstances that would have imposed a duty of disclosure on a mineral rights purchaser of its knowledge of potential coal bed methane reserves in the face of the seller's ignorance, even though the purchaser's geologist had performed tests in advance of the purchase to determine the level of gas reserves. *Id.* at 111 ("A person rightfully on property does not have a duty to disclose knowledge of the land to a seller of the land who does not have the same knowledge.") (citing W.L. Summers, *The Law of Oil and Gas* § 662 (1962)).

The principle embodied in *Mallon* regarding non-disclosure to a seller of land about the value of or the existence of minerals on that land is generally accepted. A purchaser of land containing minerals can remain silent about the condition of the land and not be subject to the equitable remedy of recission once minerals are found. Indeed,

> a party need not correct all mistakes of the other and is expected only to act in good faith and in accordance with reasonable standards of fair dealing, as reflected in prevailing business ethics. **A party may, therefore, reasonably expect the other to take normal steps to inform himself and to draw his own conclusions. If the other is indolent, inexperienced or ignorant, or if his judgment is bad or he lacks access to adequate information, his adversary is not generally expected to compensate for these deficiencies. A buyer of property, for example, is not ordinarily expected to disclose circumstances that make the property more valuable than the seller supposes.**

Restatement (Second) of Contract § 161 cmt. d. (emphasis added). This is particularly true in the context of land sales involving oil and gas interests, in part because the law rewards those who have taken the time to investigate potential mineral interests. *See* Anthony T. Kronman, *Mistake, Disclosure, Information, and the Law of Contracts,* 7 Journal of Legal Studies 1, 21 (1978) ("Information pertaining to the likelihood of a subsurface oil or mineral deposit will often be the fruit of a deliberate investment either in actual exploration or in the development of geological expertise. In order to encourage the production of such information, our legal system generally permits its possessor to take advantage of the ignorance of others by trading without disclosure.").

But the alleged circumstances of this case are different. Ms. Grayden alleges that her mistaken impression was in part created by the affirmative false statements and selective non-disclosures of the Defendants. A jury could find that, if Defendants actually made the misleading statements as Ms. Grayden claims, there was an affirmative duty to correct her misunderstanding about the ORRIs. Mere non-disclosure would be insufficient—Ms. Grayden must show that Defendants made misleading statements.

### B. Whether Ms. Grayden's Reliance was Justified is a Question of Fact to be Decided by the Trier of Fact

Beyond establishing the duty of disclosure, to succeed on her claim of fraudulent concealment, Ms. Grayden must also show that she was justified in relying on the misstatements and misimpression created by the Defendants. The Defendants have not unpersuasive arguments that Ms. Grayden's reliance on the alleged misstatements was neither reasonable nor justified. As they point out, the existence of publicly available information from the COGCC, arguably should defeat Ms. Grayden's claim of justifiable reliance. *See Cherrington v. Woods*, 132 Colo. 500, 506, 290 P.2d 226, 228 (1955) (fraud and misrepresentation claims unfounded "[w]here the means of knowledge are at hand and equally available to both parties"). The case *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010) is instructive. The *Coffee Bean* plaintiffs had purchased Peaberry Coffee franchises, but alleged that defendants failed to disclose that the company stores were actually unprofitable. *Id.* at 15. After a bench trial, the trial court found that the defendants "actively concealed material financial facts" from the plaintiffs with the intent that the plaintiffs "purchase their franchises ignorant of the true facts." *Id.* Nevertheless, the plaintiffs' reliance on the concealed information was unjustified, in part because the information from which the company's profitability could be calculated was publicly available. *Id.* at 15. The Court of Appeals agreed that the information was "publically [*sic*] available and any Plaintiff could have obtained [the] information." *Id.* at 18. Thus, "justifiable reliance [could not] be proven because reasonable due diligence would reveal accurate information." *Id.* (quotations omitted). Similarly, in *Nielsen v. Scott*, 53 P.3d 777 (Colo. App. 2002), the Colorado Court of Appeals upheld the trial court's grant of summary judgment in a case claiming fraud and concealment in favor of defendants

in part because the undisputed evidence showed that plaintiffs knew or had sufficient notice of the issues allegedly concealed and should have conducted an investigation. *Id.* at 780.

However, under Colorado law, the question of whether there was justifiable reliance on a misstatement by a party to a contract is a question of fact, to be decided by the trier of fact. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994) (stating that whether a party seeking recission of a contract based on a misrepresentation "has a right to rely on the misrepresentation is a question of fact"). In addition, where fraudulent misrepresentations have been made to a party to a contract, the Restatement (Second) of Torts teaches that there is no affirmative duty to investigate. *See* Restatement (Second) of Torts § 544 ("The recipient of a fraudulent representation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation"); *see also* Restatement (Second) of Torts § 541A ("Representation of Fact by Adverse Party") cmt. a ("In the absence of obvious falsity or reason to know of facts making reliance unreasonable, there is no requirement that the recipient [of a misrepresentation of fact] investigate the truth of the statements made to him.").

Colorado's pattern jury instruction on justifiable reliance reflects this same principle, explaining that a person's reliance on a false representation is justified "even though she did not make an investigation that would have revealed the facts unless: 1. [She] knew specific facts that would have caused a person of the same or similar intelligence, education or experience to be suspicious and investigate; and 2. [She] had a reasonable opportunity to investigate. Colo. Jury Instr., Civil 19:10; *see also Hayden*

*v. Perry*, 134 P.2d 212, 214 (Colo. 1943) ("[W]here one party to a transaction induces the other party to enter it by willful misrepresentations, the representor cannot escape liability for his fraud by claiming that the representee could have investigated the representations made and would then have found them untrue."). This Court therefore concludes that, under Colorado law and given the circumstances of this case, whether Ms. Grayden justifiably relied on the Defendants' misrepresentations about the ORRIs is a question of fact that cannot be decided on summary judgment.

On the one hand, the present case involves a sale of interests in real property. The existence of producing wells on the property was both a matter of public record, as reflected in the COGCC website, and was also a patent condition of the land and could have been seen by anyone visiting the property in question. As a resident of Texas, Ms. Grayden arguably should have protected her interests by retaining a landman to conduct a reasonable investigation and educate herself about her interests and their value, including whether they actually were producing revenue.[11] And if this Court were trying this case, it might well conclude that, under the circumstances, Ms. Grayden's reliance on the Defendants' misrepresentations or assurances was not justified.

On the other hand, there also are circumstances here that could lead to a fact finder to a different conclusion. For example, at the time of the initial transaction, Ms. Grayden did not have reason to know that the Township 3 ORRIs were producing revenue, because the confusion about the names had prevented the royalty checks

---

[11] The Court declines Defendants' invitation to hold, as a matter of law, that the COGCC production data provides the same kind of record or constructive notice created by Colorado's extensive statutory recording scheme and years of case law interpreting those statutes.

from being delivered to her. Thus, her belief that the relevant ORRIs were not then

producing revenue and no wells had been drilled on the relevant property, was not

necessarily unjustified, especially if that mistaken belief was confirmed and emphasized

by the Defendants during negotiations.

Accordingly, summary judgment will be denied with respect to Ms. Grayden's

fraudulent concealment claim.

## II.   <u>Civil Theft</u>

The Colorado civil theft statute provides:

> All property obtained by theft, robbery, or burglary shall be restored to the
> owner ... [who] may maintain an action ... against the taker thereof.... In any
> such action, the owner may recover two hundred dollars or three times the
> amount of the actual damages sustained by him, whichever is greater, and
> may also recover costs of the action and reasonable attorney fees.

Colo. Rev. Stat. § 18-4-405. The statute itself does not define theft, robbery, or burglary,

but these terms are understood within the broader criminal statutory framework. *Itin v.*

*Ungar*, 17 P.3d 129, 133 (Colo. 2000) (citing *Walgreen Co. v. Charnes*, 819 P.2d 1039,

1043 n.6 (Colo. 1991)); *Bermel v. BlueRadios*, *Inc.*, 440 P.3d 1150, 1156–57 (Colo.

2019). Thus, in relevant part, "[a] person commits theft when he or she knowingly

obtains, retains, or exercises control over anything of value of another without

authorization or by threat or deception." Colo. Rev. Stat. § 18-4-401(1). Defendants

argue that Ms. Grayden, in fact, authorized the sale, so her civil theft claim fails.

However, simply authorizing a transaction does not defeat a civil theft claim

because use of the word "or" is "presumed to be disjunctive." *West v. Roberts*, 143 P.3d

1037, 1040 (Colo. 2006) (en banc) (citing *Armintrout v. People*, 864 P.2d 576, 581

(Colo.1993)). "Thus, though a theft may occur when one takes property without the

owner's authorization, the use of the word 'or' indicates that a theft may also occur if the property is taken by deception, even with the owner's authorization." *Id.* This is what Ms. Grayden alleges happened in this case. According to Ms. Grayden, Defendants can be liable for civil theft because they obtained her ORRIs by deceiving her as to whether the ORRIs were producing revenue. "Theft by deception as set forth in subsection 18-4-401(1)(a) requires proof that the victim relied on a swindler's misrepresentations, which caused the victim to part with something of value." *Id.* (citing *People v. Warner*, 801 P.2d 1187, 1189–90 (Colo.1990)).

Based on the foregoing, summary judgment will also be denied with respect to Ms. Grayden's civil theft claim. As previously discussed, there are fact issues that preclude summary judgment on Ms. Grayden's fraudulent concealment claim. The same fact issues regarding whether Ms. Grayden was actually deceived (because her reliance on Defendants' misstatements may or may not have been justified) preclude the grant of summary judgment on the civil theft claim.

### III.   Unilateral Mistake/Reformation/Constructive Trust

### A. Colorado Recognizes the "Presumed-to-Know" Principle

Defendants argue that Ms. Grayden signed an integrated contract, and all of Ms. Grayden's claims are barred by Colorado's "presumed-to-know" principle. Under Colorado law "one who signs or accepts a written contract, in the absence of fraud, is conclusively presumed to know its contents and assent to them." *Bell v. Land Title Guarantee*, 422 P.3d 613, 616 (Colo. App. 2018) (citations omitted). And, generally speaking, "if only one party misunderstood the effect of a written instrument . . . reformation of the contract is inappropriate and the contract is enforced according to its

terms." *Tatonka Capital Corp. v. Connelly*, 390 F. Supp. 3d 1289, 1294 (D. Colo. 2019)

(citing *Griego v. Kokkeler*, 543 P.2d 729, 730 (Colo. App. 1975), and *Shoels v. Klebold*,

375 F.3d 1054, 1066 (10th Cir. 2004)).

### B. Unilateral Mistake is an Exception to the "Presumed-to-Know" Principle

But Colorado also recognizes the "presumed-to-know" principle does not end the

inquiry. There are exceptions to the general principle, such as when a contract was

procured by fraud. *See Bell*, 422 P.3d at 616 (noting that the "presumed-to-know"

principle applies absent fraud). Unilateral mistake—which Ms. Grayden claims in this

case—can also defeat the "presumed-to-know" principle in certain limited

circumstances.

The Colorado Supreme Court has not expressly addressed whether a unilateral

mistake can permit contract reformation. However, in *Tatonka*, Judge Krieger provided

a detailed analysis of how the Colorado Supreme Court would rule if the issue were to

arise before it. She found that, "on at least three occasions, the Colorado Supreme

Court appears to have acknowledged . . . that unilateral mistake by one party to a

contract can permit reformation if the evidence demonstrates that, at the time the

contract was formed, the non-mistaken party was aware of the mistaken party's

mistake." 390 F. Supp. 3d at 1299. After examining the holdings of those three

occasions—*Jackson Enterprises, Inc. v. Maguire*, 144 Colo. 164, 355 P.2d 540, 543

(1960); *In re Marriage of Manzo*, 659 P.2d 669 (Colo. 1983); and *Powder Horn*

*Constructors, Inc. v. City of Florence*, 754 P.2d 356 (Colo. 1988)—Judge Krieger held,

"it appears to this Court that the Colorado Supreme Court has repeatedly endorsed the

notion that a contract party's unilateral mistake about a material fact, coupled with the

non-mistaken party's awareness of that mistake, can justify reformation of the parties' contract." 390 F. Supp. 3d at 1300–01. Reformation or recission is particularly appropriate where the mistake of one party is the result of fraud or inequitable conduct by the other party. *Id.* at 1301 (citing *Poly Trucking*, 93 P.3d at 566 for the general rule that a contract can be reformed based on unilateral mistake by one party "where the other engaged in fraud or inequitable conduct.").

The Court accepts Judge Krieger's proposition that Colorado law recognizes that are certain situations where unilateral mistake can reform a contract.  The principles articulated by Judge Krieger in *Tatonka* are echoed in the Restatement (Second) of Contracts. Section 164 of the Second Restatement makes clear that "If a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." §164. Section 153 of the Restatement (Second) of Contracts further provides:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake *or his fault caused the mistake*.

§ 153 (emphasis added). Further, "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation. . . unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." § 157.

**C. Disputed Issues of Material Fact Preclude Summary Judgement in favor of Defendants on Ms. Grayden's Unilateral Mistake Claim**

The critical fact questions that preclude summary judgment on the mistake of fact claim are whether the Defendants made affirmative false statements, reinforcing Ms. Grayden's mistaken belief that there were no revenue producing wells covered by the ORRIs, and whether, under the circumstances, Ms. Grayden was justified in relying on those misstatements.

It should be made clear that Mr. Eddington in his own affidavit has emphatically denied making any such statements:

> During my extended negotiations I never told Kim [Grayden], by phone, email, text, or any other method of communication that there are no producing wells on the Section 26 property or that there were no plans to drill wells on the Section 26 property. Ms. [Grayden] has produced no emails or other written messages from me to this effect, because I never told her anything about whether or not her Section 26 land has producing wells and/or whether her ORRIs generate royalties.

(Dkt. #62-1 at 2, ¶ 2.) Mr. Eddington also swears that Ms. Grayden never told him that she "categorically refused to sell any interests in lands with producing wells, royalty-generating ORRIs, or anything of the sort." (*Id.* at ¶ 3.) Instead, she only expressed that she did not want to sell particular interests that were not part of this transaction for the precise reason that she did not want to sell them. *Id.* Mr. Eddington expands: "I most certainly never told her that her Section 26 interests had no producing wells. I also never concealed any information about the existence of producing wells on Section 26– which would have been impossible anyway, since that information is public." (*Id.*)

Notwithstanding Mr. Eddington's vehement denials, at this stage, the Court must view the record and draw all inferences in the light most favorable to Ms. Grayden. *Pepsi-Cola Bottling Co.*, 431 F.3d at 1255. Because Ms. Grayden offers her testimony,

via affidavit, that Defendants made affirmative misrepresentations to her about the status of her wells, there are genuine issues of fact sufficient to preclude summary judgment on the unilateral mistake claim.

The Court emphasizes its view that this case hinges on whether Defendants made affirmative misrepresentations to Ms. Grayden. If Ms. Grayden can only show that Defendants failed to disclose information they knew, there would be no basis for recission. As described above, a purchaser of land can remain silent about the condition of the land, such as the existence of minerals, and not be subject to the equitable remedy of recission once minerals are found. Defendants, as the buyers, had no obligation correct or compensate for Ms. Grayden's ignorance and lack of appropriate diligence if they were simply aware of her mistake and failed to correct it. Ms. Grayden should have taken the normal steps to educate herself about the value of her interests, including whether the wells were producing. However, Defendants cannot avoid rescission or other appropriate equitable remedy if they affirmatively misled Ms. Grayden through their statements so as to create the mistaken impression.

## IV.   **Affirmative Defenses of Ratification, Waiver, and Estoppel**

Defendants also argue that the doctrines of ratification, waiver, and estoppel bar Ms. Grayden's claims. Specifically, they argue that Ms. Grayden's execution of the Corrected PSA after discovering that her Township 3 ORRIS were, in fact, generating revenue, ratified the contract and thus waived any claims she had related to the April 15, 2020 PSA. The Court disagrees that this is a question to be decided on summary judgment.

Ratification is "a person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation . . . ." *Ratification*, *Black's Law Dictionary* (11th Ed. 2019). In the context of fraud, "the general rule is that to sustain the defense of ratification against the charge of fraud in the inducement it must appear that the defrauded party, with full knowledge of the truth respecting the false representations, elected to continue to carry out the agreement." *Holland Furnace Co. v. Robson*, 402 P.2d 628, 630–31 (Colo. 1965). However, "whether fraud was waived involves questions of fact, particularly the fact of intent." *Id.* (finding that trial court was not required to find, as a matter of law, that the plaintiff had intended to ratify the contract and thus waived fraud claim). The question remains whether Ms. Grayden intended to ratify the contract in the face of Defendants' allegedly fraudulent conduct and her unilateral mistake. Ms. Grayden claims that she only signed the Corrected PSA to correct the erroneous effective date of the agreement and ensure that she received the suspended royalty payments that were accruing but had never been paid out due to the title confusion. (*See* Dkt. #62 at 10–11, ¶¶ 72–77.) Thus, she had no intention to ratify the sale. By contrast, Mr. Eddington argues that, by the time of the Corrected PSA, any mistaken belief Ms. Grayden had about whether the wells were producing was corrected, and she signed the Corrected PSA without any objection as to what was being conveyed. Per the Defendants, once she discovered her mistake and if she truly did not intend to convey any revenue-generating interests, she would have raised the issue at the time of the Corrected PSA. Her failure to do so demonstrates her intent to ratify the original PSA.

The Court finds that Ms. Grayden's intent is in dispute and, under the circumstances, her intention is a question of fact appropriately left to the finder of fact at trial.

"Waiver is the intentional relinquishment of a known right or privilege." *NationsBank of Georgia v. Conifer Asset Mgmt. Ltd.*, 928 P.2d 760, 763 (Colo. App. 1996). "Waiver may be determined as a matter of law only when the material facts are not in dispute . . . [,] otherwise, waiver is factual determination for the trial court." *Id*. The material factual disputes preclude summary judgment on the defense of ratification similarly preclude summary judgment on the waiver defense. The finder of fact must decide whether Ms. Grayden's conduct is sufficient to demonstrate waiver.

Finally, Defendants' request for summary judgement on the affirmative defense of equitable estoppel also fails. Under Colorado law, equitable estoppel is "generally understood as arising 'where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence.'" *Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. App. 2019) (quoting *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010)). There are four elements required to apply estoppel:

> [T]he party against whom the estoppel is asserted must know the [relevant] facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Id.* "However, Colorado has never favored estoppel," so the doctrine is only applied when "all of the elements constituting an estoppel are clearly shown." *Id.* (internal quotations and citation omitted). Defendants cannot clearly establish the elements required to apply estoppel at the summary judgment stage.

V.    <u>**Unjust Enrichment**</u>.

Under Colorado law, "Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not rely upon a promise between parties." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009). The general rule is that "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). "[U]njust enrichment is an equitable remedy that is not available when a remedy at law lies to address the same conduct." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1175 (D. Colo. 2015) (*citing Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224, 1260–61 (D.Colo.2014)).

Ms. Grayden's unjust enrichment claim is superfluous. Ms. Grayden's attempt to rescind the written contract succeeds or fails with her unilateral mistake claim. Alternatively, Ms. Grayden can obtain damages for fraudulent concealment. But if she cannot prove that Defendants made affirmative representations causing her to mistakenly believe there were no producing wells covered by the ORRIs, or if she cannot prove that she was justified in relying on the misrepresentations, she cannot escape the written contract. The existence of a binding and enforceable contract would preclude her unjust enrichment claim. By contrast, if she succeeds on her unilateral mistake claim, then her remedy is contract rescission, reformation, or the imposition of a constructive trust, and the unjust enrichment remedy becomes superfluous or duplicative. On her fraudulent concealment she would be entitled to legal damages.

Because the remedies for Ms. Grayden's surviving unilateral mistake claim are also equitable, her unjust enrichment claim is duplicative and should be dismissed.  !

## RECOMMENDATION

In light of the foregoing, it is hereby **RECOMMENDED** that the Defendants' Motion for Summary Judgment (Dkt. #50) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to Ms. Grayden's claims for fraudulent concealment, civil theft, and unilateral mistake, Defendants' Motion for Summary Judgement should be **DENIED;**

- As to Ms. Grayden's claim for unjust enrichment, Defendants' Motion for Summary Judgement should be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated 10th day of December, 2021.

_____
N. Reid Neureiter
United States Magistrate Judge