**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 21-cv-00106-RM-NRN

KIMBERLY S. GRAYDEN f/k/a Kimberly S. Pitman,

    Plaintiff,

v.

SPRING CREEK ENERGY PARTNERS, LLC, a Colorado limited liability company, and
JASON L. EDDINGTON, individually,

    Defendants.

_____

**ORDER**
_____

Before the Court is the Recommendation of United States Magistrate Judge N. Reid Neureiter (ECF No. 79) to grant in part and deny in part Defendants' Motion for Summary Judgment (ECF No. 50). Defendants filed Objections to the Recommendation (ECF No. 81), and Plaintiff filed a Response (ECF No. 83). Further developments prompted additional motions. Defendants filed a Request for Judicial Notice (ECF No. 85), asking the Court to take judicial of documents recorded in the public records of the Clerk and Recorder for Weld County, Colorado. Plaintiff responded by filing an Opposition and Objection as well as a Motion to Strike. (ECF Nos. 86, 87.) Defendants in turn filed a Reply and Response to those pleadings (ECF Nos. 90, 91), and raised the motions ante with a Motion to Supplement (ECF No. 92), seeking to add new facts about the Weld County public records to the Statement of Undisputed Material Facts they submitted with their Motion for Summary Judgment. Plaintiff responded with a Reply and Response to those pleadings (ECF Nos. 97, 98), and Defendants then filed an

Amended Request for Judicial Notice (ECF No. 99), asking the Court to take judicial notice of certified copies of twenty-three Weld County public records, most, but not all, of which were included in its previous Request for Judicial Notice (ECF No. 85).

The Court granted the Amended Request and provided Plaintiff an opportunity to supplement her response to the Motion for Summary Judgment in light of the Weld County public records. (ECF No. 100.) Plaintiff then filed a Supplemental Response (ECF No. 101), and Defendants filed a Reply (ECF No. 101). For the reasons below, the Court rejects the magistrate judge's Recommendation because, in light of the county records now in the record of this case, it is now moot. The Court grants Defendants' Motion for Summary Judgment and denies as moot the other pending Motions in this case.

## I. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Recommendation

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. When a magistrate judge issues a recommendation, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

### B. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo*

*v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II.     BACKGROUND

These facts are undisputed. Wilda Eugene Thornton died in 2016 and bequeathed to Plaintiff certain overriding royalty interests located in Weld County. (ECF No. 62, ¶¶ 1, 3.) In early 2018, Defendant Spring Creek Energy Partners, LLC ("Spring Creek")[1] approached Plaintiff to inquire whether she would be interested in selling some of those royalty interests, and negotiations ensued. (*Id.* at ¶ 10.) In November 2019, Plaintiff contacted Defendant Eddington to inquire whether Spring Creek was still interested in purchasing some of her royalty interests. (*Id.* at ¶ 12.) In March 2020, Plaintiff and Spring Creek entered into a Purchase and Sale Agreement ("PSA") in which Plaintiff agreed to sell one third of her royalty interests for about $650,000. (*Id.* at ¶ 20.) The following month, Plaintiff delivered an Assignment of Overriding

---

[1] Spring Creek has two members, one of whom is Defendant Eddington.

Royalty Interest conveying those interests to Spring Creek. (*Id.* at ¶ 24.) In May 2020, Plaintiff and Spring Creek executed a Corrected Assignment of Overriding Royalties, changing the effective date of the conveyance from December 1, 2019, to March 31, 2020. (*Id.* at ¶ 49.)

Plaintiff filed this lawsuit in January 2021. She alleges she did not realize until spring 2020 that she was assigning to Spring Creek royalty interests in producing wells and that she never would have agreed to sell her royalty interests had she known the wells were producing. She further alleges she repeatedly told Defendant Eddington she did not intend to sell any royalty interests connected to producing wells, that Defendants knew of her mistaken belief that interests covered by the PSA were not producing, and that they affirmatively misled her by representing that those interests had no producing wells. In her Second Amended Complaint, she asserts claims for fraudulent concealment, unjust enrichment, unilateral mistake, and civil theft.

In the Recommendation, the magistrate judge concluded that Defendants were entitled to summary judgment on Plaintiff's unjust enrichment claim[2] but that disputed issues of fact precluded granting summary judgment on the remaining claims. Those claims hinge on whether Defendants made misleading statements to Plaintiff and, if so, whether Plaintiff's reliance on such statements was justified. However, county records subsequently produced by Defendants and judicially noticed by the Court have placed this case in a new posture. If, as Defendants assert, the county records placed Plaintiff on constructive notice that the wells at issue were producing, then Plaintiff's reliance on Defendants' alleged statements cannot be justified, and Defendants are entitled to summary judgment. As noted above, the parties have filed supplemental briefs addressing this issue.

---

[2] Plaintiff did not object to the dismissal of this claim.

### III. DISCUSSION

As a threshold matter, the Court rejects Plaintiff's argument that Defendants' new arguments and evidence that the Weld County public records put her on constructive notice are untimely and waived. The Court may receive further evidence after a magistrate judge issues a recommendation. *See* Fed. R. Civ. P. 72(b)(3). Moreover, in their Motion, Defendants did raise the argument that Plaintiff was had constructive notice that the wells at issue were producing, albeit based on information available on the Colorado Oil and Gas Conservation Commission's website rather than the county records submitted later. (ECF No. 50 at 11-12.) The Court does not disagree with the notion that this case would have proceeded more efficiently had the county records been produced sooner, but in this instance, any prejudice to Plaintiff has been cured by allowing supplemental briefing, and the Court declines to find that Defendants have waived this issue.

Next, the Court finds the royalty interests at the heart of this case are real property interests, subject to Colorado's recording statute. *See Page v. Fees-Krey, Inc.*, 617 P.2d 1199, 1194 (Colo. 1980) (en banc). "As a matter of law, a person who acquires an interest in real property is on constructive notice of all prior filings concerning that property." *Bolinger v. Neal*, 259 P.3d 1259, 1270 (Colo. App. 2010) (citing Colo. Rev. Stat. § 38-36-149); *see also Arnov v. First Fed. Sav. & Loan Ass'n of Tarpon Springs*, 713 P.2d 1329, 1331 (Colo. App. 1985) ("Under the pertinent recording statute, a person is deemed to have constructive notice of any instrument encumbering the title to real property once the document has been recorded in the office of the county clerk and recorder of the county where such real property is situated."). Moreover, "so long as a prior instrument is properly recorded, subsequent purchasers have an

5

obligation to find it on the record and are considered to have constructive notice of it, even if they do not locate it." *Franklin Bank N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003) (en banc) (quotation omitted). Although "the prime purpose of the recording acts is to give subsequent purchasers information regarding the title of the property that they propose to acquire," *id.* at 312 (quotation omitted), they provide the same notice to sellers of interests in real property.

Here, Defendants have submitted certified copies of twenty documents recorded with the Weld County Clerk and Recorded from June 2012 through January 2020. (*See* ECF No. 99 at 2-4.) The documents include Affidavits of Extension of Oil and Gas Leases, Agreements to Amend and Ratify Oil and Gas Leases, and Declarations of Pooling and Unitizations. Defendants contend that these county records pertain to Plaintiff's property at issue in this case and placed her on "constructive notice" of ongoing oil and gas production associated with her royalty interests.

In her Supplemental Response, Plaintiff argues that under Colorado law, a plaintiff is not barred from bringing fraud or rescission claims "simply because public records might have disclosed the fact about which the defendant was lying to her." (ECF No. 101 at 6.) She cites several venerable authorities that deal with inquiry notice and, more critically here, do not discuss Colorado's recording statute. She also cites a more recent case, *Marcantel v. Michael & Sonja Saltman Family Trust*, 993 F.3d 1212 (10th Cir. 2021), where the court applied Utah law to resolve a matter where the purchaser of real property sued the seller for fraudulent nondisclosure. The Court finds these authorities provide little, if any, helpful guidance as to how the Colorado Supreme Court would apply the recording statute in the context of this case.

Plaintiff also makes two textual arguments based on the statutory language of the

recording statute. Section 38-35-106(1) provides, in its entirety, as follows:

> Any written instrument required or permitted to be acknowledged affecting title to real property, whether acknowledged, unacknowledged, or defectively acknowledged, after being recorded in the office of the county clerk and recorder of the county were the real property is situate, shall be notice to all persons or classes of persons claiming any interest in said property.

Plaintiff's first textual argument is that the county records Defendants rely on do not "affect[] title" to the property at issue. However, the Court is doubtful that the Colorado Supreme Court would adopt such a strained reading of the recording statute—even more so in a case where the seller of the royalty interests at issue claims her willingness to sell hinged upon whether those interests were connected to producing wells and the county records at issue provided that information. Further, had Colorado's general assembly intended to limit the statute in such a manner, the Court is doubtful that it would be drafted to begin with the inclusive term "any written instrument."

Plaintiff's second textual argument relies on neighboring sections of the statute. She argues that the statute applies only to documents that "convey," "encumber," or "affect" title to real property. *See* Colo. Rev. Stat. §§ 38-35-107, -108, -109. But Plaintiff cites no caselaw supporting her narrow reading of the statute, the Court finds this cut-and-paste approach unpersuasive. Rather, the plain meaning of the statute appears to be that duly recorded county records are to be deemed constructive notice to "*all* persons . . . claiming *any* interest in said property." § 38-35-106(1) (emphasis added). Again, the inclusive language of the statute weighs against the strained distinctions Plaintiff attempts to draw.

The Court rejects Plaintiff's contention that the larger purpose of the recording statute—protecting subsequent purchasers and preventing current owners from facing technical or strict

constructions—would be significantly undermined if she is deemed to have been on constructive notice that the wells were producing. Colo. Rev. Stat. § 38-34-101 sets forth Colorado's "[g]eneral policy regarding titles":

> It is the purpose and intention of this article and article 35, part 2 of article 39, and part 1 of article 41 of this title to render titles to real property and every interest therein more secure and marketable, and it is declared to be the policy in this state that this article and all other laws concerning or affecting title to real property and every interest therein and all recorded instruments, decrees, and orders of courts of record, including all proceedings in the suits or causes wherein such orders or decrees have been entered or rendered, shall be liberally construed with the end in view of rendering such titles absolute and free from technical defects so that subsequent purchasers and encumbrancers by way of mortgage, judgment, or otherwise may rely on the record title and so that the record title of the party in possession is sustained and not defeated by technical or strict constructions.

But Plaintiff's reliance on this provision is inapt. This case does not turn on whether technical defects affect title to her royalty interests, and it involves the marketability of those interests only indirectly. The Court does not see how the purpose of rendering title to those interests more secure and marketable is undermined by concluding Plaintiff had constructive notice, as a matter of law, of the county records at issue. Plaintiff's reliance on *Upson v. Goodland State Bank and Trust*, 823 P.2d 704 (Colo. 1992) (en banc), is also misplaced, as there is no allegation that any of the documents Defendants rely upon were forged.

Finally, the Court does not agree with Plaintiff's contention that the determination of constructive notice in this case is a question for the jury. Neither case cited by Plaintiff for this proposition deals with Colorado's recording statute. In light of the county records of which the Court has taken judicial notice and Colorado's recording statute, there are no genuine issues of material fact for a jury, and the Court finds Defendants are entitled to judgment as a matter of law.

### IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 50) is GRANTED, the magistrate judge's Recommendation (ECF No. 79) is REJECTED AS MOOT, and the other pending Motions in this case (ECF Nos. 87, 92) are DENIED AS MOOT. The Clerk is directed to CLOSE this case.

DATED this 31st day of March, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge